**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

NANCY J. McDERMOTT,
JEFF SCURRY, JR.,

      **Plaintiffs,**

-vs-                                       Case No. 6:07-cv-150-Orl-31KRS

BREVARD COUNTY SHERIFF'S OFFICE,
CITY OF COCOA, FLORIDA, JACK R.
PARKER, MICHAEL MYERS, ADAM S.
DELKER, ALAN F. MOROS, DOUGH
SCRAGG, DAVID FITCH, JAMES
LANDEN, DEPUTIES DOE 1-15, PHIL
LUDOS, KEN SHEDRICK, OFFICER
HORTON, OFFICER OWENS, OFFICERS
DOE 1-15,

      **Defendants.**

## ORDER

This matter comes before the Court on a Motion to Dismiss (Doc. 12) filed by Defendants Ken Shedrick ("Shedrick"), Officer Horton ("Horton") and Officer Owens ("Owens") and Plaintiffs' Response thereto (Doc. 16).

**I. Background**

Plaintiffs bring this cause of action as a result of several allegedly violent encounters between Plaintiffs and law enforcement officers employed by the City of Cocoa Police Department ("CPD") and the Brevard County Sheriff's Office ("BCSO"). Plaintiffs' Complaint (Doc. 1) alleges six causes of action arising out of four separate incidents.[1] Defendants Owens, Shedrick

---

[1] It appears from the facts, as set out in the Complaint, that CPD officers were only involved in the first two incidents, and therefore incidents three and four need not be described here.

and Horton were, at all times relevant hereto, employed by CPD as law enforcement officers. The facts of as alleged by Plaintiffs are as follows:

On August 4, 2005, Jeff Scurry, Jr. ("Scurry"), stopped at a convenient store, and while reaching into a friend's vehicle to retrieve his wallet, was approached by Shedrick and Horton. Scurry panicked and began to run. Shedrick and Horton chased Scurry, and tasered him repeatedly once he was on the ground. Shedrick and Horton then handcuffed Scurry behind his back and stripped most of his clothes off of him, so he was standing in public wearing only his boxers. One of the officers then ripped the taser darts from Scurry's back.

Shedrick and Horton placed Scurry inside their police vehicle and sprayed him with a chemical agent. The officers then drove Scurry down an alley, away from public view, where they proceeded to taser Scurry repeatedly and spray him again with the chemical agent while he was handcuffed in the back of the police car. Shedrick and Horton then locked Scurry in the vehicle while the chemical agent dispersed, and watched him plead for help. Scurry had a severe reaction to the chemical agent which caused him to spit and lose control of his bowels.

Shedrick and Horton then drove Scurry to CPD's station, in handcuffs and leg shackles. Upon arriving at the station, Scurry asked to go to the hospital because his hands were numb. While Plaintiff was in the holding cell, he was humiliated by officers commenting on his smell and laughing at him. Scurry was taken by ambulance to the hospital, with Shedrick riding along. In the ambulance, Shedrick placed a cloth bag over Scurry's head.

---

Furthermore, CPD's only alleged involvement in incident two is that CPD instructed BCSO to arrest Plaintiff Jeff Scurry, Jr., however there were no CPD officers on the scene when that incident took place, and therefore those details will not be discussed here either.

Upon his arrival at the hospital, Scurry was handcuffed to a table, and the cloth bag was kept over his head until a nurse requested it be removed so she could examine him. Scurry asked that he be cleaned up, but this was not done. Instead, Shedrick continued to taunt Scurry and falsely informed his own supervisor that Scurry had refused medical treatment. Because Scurry's legs were shackled tightly, he could not walk properly, and Shedrick dragged him down the hospital hallway with the help of other CPD officers and hospital security guards.

Coincidentally, at about the same time, Scurry's adoptive mother, Plaintiff Nancy McDermott ("McDermott") was rushed to the same hospital for a possible stroke. McDermott was accompanied by her own mother, Eva Massanek ("Massanek"), and her friend, Ann Rafferty. While in the emergency room, McDermott heard a man screaming "What are you doing to me?" but did not know it was her son. McDermott then witnessed the man being slammed on his face and dragged down the hall screaming. McDermott realized that the man was her son because she recognized his boxers. McDermott ripped the medical wires off her body and ran toward Scurry yelling "That's my son!"

Shedrick continued to drag Scurry down the hospital hall, handcuffed and shackled, dropping him repeatedly on the concrete tiled floor. Scurry called out to his mother for help, and McDermott pleaded with the officers to stop hurting her son. McDermott and Massanek were roughly carried away by a CPD officer and a hospital security guard. Scurry did not receive medical treatment because he was rushed out of the hospital by CPD officers. Once outside of the hospital, Shedrick dropped Scurry on his face. Scurry was then taken back to the police station, where he was finally allowed to clean himself up. Shedrick and Horton then filed inaccurate

-3-

police reports, omitting reference to the force used on Scurry and including false allegations that Scurry threatened to kill a CPD officer.

Scurry alleges, *inter alia,* that he was arrested without probable cause and subjected to excessive force by the Defendants, in violation of 42 U.S.C. § 1983 ("§ 1983).

## II. Standard of Review

In ruling on a motion to dismiss, this court must view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory." *Id.* (internal citation and quotations omitted). "A complaint need not specify in detail the precise theory giving rise to the recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir. 1989).

### III. Legal Analysis

   *A) Arguments Applicable to All Counts*

Defendants first allege that Shedrick, Horton and Owens were not sued in their individual capacity, and should therefore be dismissed from this action because a suit against them in their official capacity would be equivalent to a suit against their employer. Plaintiffs' Complaint does not specify whether these defendants are being sued in their individual or official capacity. However, Count I is titled as "Against Individual Defendants" which implies that it is brought against the officers in their individual capacity. Under the applicable standard of review, the Court will construe the allegations in the Plaintiffs' favor and assume that they intended to bring this action against the officers in their individual capacities.

Defendant Owens argues that he should be dismissed from this action because Plaintiffs' Complaint contains no allegations of wrongdoing by him. (Doc. 12 at 4). Plaintiffs' Response states that "Owens was one of the many officers at the City of Cocoa, Florida police station that while Plaintiff Scurry was in the holding cell humiliated Scurry by commenting on Scurry's smell and laughing at him." (Doc. 16 at 6). However, Plaintiffs' Complaint contains no such allegations,

and no other allegations of wrongdoing by Owens.[2]  Therefore, Defendant Owens will be dismissed from this action.

*B) Count I: 42 U.S.C. § 1983 Against Individual Defendants*

Defendants argue that this count should be dismissed on the basis of qualified immunity. In order to receive qualified immunity, "the government official must first prove that he was acting within [the scope of] his discretionary authority." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once a defendant establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id*. To determine whether qualified immunity is appropriate, the Court must ask two questions. First, whether the allegations show the officers violated Plaintiffs' constitutional rights. *Id.*  Second, if a violation of a right can be made out, the Court must determine whether that right was clearly established. *Id.*

First, Defendants fail to argue that the officers were performing discretionary functions at the time alleged.  However, it is generally accepted that law enforcement officers conducting arrests are acting within the scope of their discretionary functions. *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).

Yet, even assuming that the officers were performing discretionary functions, they are still not entitled to qualified immunity.  Plaintiffs allege violations of the Fourth and Fourteenth Amendments by false arrest and excessive force.  "It is clearly established that an arrest made

---

[2]It is unclear whether such allegation would even be sufficient to support a cause of action against Owens, however, the Court declines to address this issue because no such allegation is made in the Complaint.

without probable cause violates the Fourth Amendment." *Davis*, 451 F.3d at 764.  The same is true of the use of excessive force in carrying out an arrest.  *Id.* at 767.  Therefore, Count I will not be dismissed.

*C) Count II: Conspiracy to Violate 42 U.S.C. § 1983*

Defendants first argue that the conspiracy claim is barred by the "Intra-corporate Conspiracy Doctrine." (Doc 12 at 8).

> The `intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine applies to public entities such as the City and its personnel.

*Denney v. City of Albany*, 247 F.3d 1172, 1190-1191 (11th Cir. 2001)(internal citations and quotation marks omitted).

However, Plaintiffs' Complaint contains allegations of conspiracy between two corporate entities: CPD and BCSO. (Doc. 1 at 8). Therefore, Count II is not barred by the intra-corporate conspiracy doctrine.

Defendants next argue that, even if Plaintiffs have alleged conspiracy between the two entities, there is a heightened pleading standard applicable to this count that has not been complied with.  It is true the Eleventh Circuit imposes a heightened pleading standard on § 1983 claims brought against individual government officials, because they are entitled to claim a defense of qualified immunity. *GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1368 (11th Cir. 1998) (citing *Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 168 (1993)).

However, as noted by Defendants, this standard requires only that Plaintiffs specifically allege facts that are "sufficient to permit the Court to identify whether a Constitutional right was violated, and whether the officers knew or should have known that they were violating a clearly established right." (Doc. 12 at 10). As discussed above, Plaintiffs have sufficiently pled facts to allege violations of clearly established constitutional rights. Therefore, Count II will not be dismissed.

### *D) Count III: Assault and Battery*

Defendants' first argument on this count, which apparently has something to do with the individual/official capacity distinction, is virtually incoherent, and therefore will not be discussed. Defendants' second argument is that "when a plaintiff brings a claim for false arrest, the normal force incident to arrest does not give rise to a separate tort." (Doc. 12 at 11). However, Plaintiffs allege far more that the normal force incident to arrest. Defendants also state that if Plaintiffs are claiming that excessive force was used, the claim must sound in excessive force and not battery. (Doc. 12 at 11). However, Defendants cite no law to indicate that Florida has a separate tort of "excessive force" that would preclude an action for assault and battery, and Count III is not subject to dismissal simply on the basis of a faulty title. Plaintiffs have sufficiently alleged a cause of action for Defendants' use of unnecessary and unwarranted force and, therefore, Count III will not be dismissed.

### *E) Count IV: Negligence*

Defendants seek to dismiss Count IV on the basis that Florida does not recognize a cause of action for the negligent use of excessive force. (Doc. 12 at 12). However, Plaintiffs argue that Count IV is not a claim for negligent use of excessive force, but rather a claim for negligent use of

a firearm (in this case, a taser), which is permissible under Florida law. (Doc. 16 at 13-15). Following a thorough analysis of Florida negligence law, as applicable to law enforcement officers, the Eleventh Circuit has recognized that "Florida law . . . clearly recognizes a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264 (11th Cir. 2001). However, Plaintiffs' Complaint does not reflect such a claim.  Count IV contains no reference to the use of tasers, or to any action separate and distinct from the alleged excessive force. Furthermore, the facts do not allege any negligent handling of a taser apart from the alleged use of excessive force.  While Plaintiffs are permitted to plead inconsistent claims in the alternative, Plaintiffs have failed to do so here.  Therefore, Count IV will be dismissed.

  *F) Counts V and VI: Intentional Infliction of Emotional Distress*

  In reference to Counts V and VI, Defendants ask this Court to determine as a matter of law that their actions, as alleged by Plaintiffs, were not outrageous. Plaintiffs' complaint, however, contains sufficient allegations to withstand a motion to dismiss on these counts, and therefore Counts V and VI will not be dismissed.

**IV Conclusion**

Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss (Doc 12) is **GRANTED** in part and **DENIED** in part. Defendant Owens is **DISMISSED** from this action, and Count IV of Plaintiffs' Complaint (Doc. 1) is **DISMISSED** without prejudice. Plaintiffs shall have leave to file an amended complaint within twenty (20) days of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 14, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party